*E-FILED - 7/3/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JASON LAMONTE CROSBY, | No. C 06-6825 RMW (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| IVAN CLAY, | |
| Respondent. | |

**INTRODUCTION**

Petitioner, a prisoner of the state of California proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. This court ordered respondent to show cause why a writ should not be granted. Respondent filed an answer addressing the merits of the petition, and petitioner filed a traverse. For the reasons stated below, the petition is denied.

**PROCEDURAL BACKGROUND**

In September 2004, a jury in the Contra Costa County Superior Court convicted petitioner of various state charges, including assault with a firearm (Cal. Penal Code § 245(a)(2)), inflicting corporal injury on a child (Cal. Penal Code § 273d(a)), shooting at an inhabited dwelling (Cal. Penal Code § 246), possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)), and possession of ammunition by a felon (Cal. Penal Code §

12316(b)(1)). With enhancements for personal use of a firearm and a prior strike, the trial court sentenced petitioner to a term of twelve years in state prison. Petitioner appealed to the California Court of Appeal, which affirmed the conviction on February 6, 2006, and to the California Supreme Court, which summarily denied his petition for review on April 26, 2006. Petitioner filed the instant habeas action on November 2, 2006.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are summarized as follows:

> On November 18, 2003, Zena James (defendant's "common law wife" and mother of three children by him) spray painted defendant's car after finding out that defendant had engaged in a sexual encounter with her adult daughter by another relationship. Defendant came to James's residence and fired a shot into the house, which shattered glass and injured her daughter. James told Officer Virgil Thomas that defendant fired a shot into the house that shattered the glass, injuring her daughter L. Specifically she said that defendant came to her residence and yelled, but she could not understand what he was saying because she was inside the house and he was standing outside. He threw something at the window, but it bounced off, fell to the ground outside, and broke. Defendant then became agitated and drew a handgun, pointed it, and fired a single shot into the residence. He was pointing the gun at her when the shot was fired. She was in the kitchen when the shot was fired. She told the other people in the house to get down because defendant had a gun.
>
> James told Detective Manjit Sappal basically the same story. When defendant came to her residence, he walked into the front yard area and was standing in front of a glass sliding window. He reached into his pocket, pulled out an object, and threw it at the window; that object fell to the ground. The object did not break the window. Defendant then reached into his waistband and pulled out a revolver, pointed it at her, and fired one round. She bent down to duck and saw glass shatter; she then learned her daughter L. had been injured. Defendant was about two feet outside the window when he fired the gun. James was in the kitchen, near a dining table when the shot was fired. She was with two of her daughters, Darice (an adult) and L. Both were standing with her in the kitchen.
>
> At trial, James testified to a different version of events, indicating that she was standing between the kitchen and living room; sliding glass doors separated the kitchen from the courtyard. Her one-year-old son was with her, and her sixteen-year-old daughter L. was in the back room. James saw defendant throw a metallic object through the window and the window burst just as L. was coming down the hallway. L. got a fragment of glass in her eye. She denied that defendant fired a gun into her house.
>
> L.'s medical records were introduced into evidence at trial. They indicated that L. said she was sitting next to a window, on a couch, when a shot was fired. Additionally, L. was interviewed at the hospital by Officer Thomas. She told Officer Thomas that her eye was injured by glass fragments when defendant

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny           2

> shot into the house. She saw defendant shoot a revolver at James. At trial, L. also testified to a different version of events, saying that defendant threw an object through a window, but no gun had been fired. She denied talking to Officer Thomas.
>
> Ruth Ducharme, a police technician, went to James's house and observed a hole consistent with a bullet hole in one of the sliding glass doors in the front of the house; she found a second hole consistent with a bullet hole in the back of a kitchen chair directly in line with the hole in the sliding glass door. The hole in the sliding glass door was circular, and "spidered" on the outside. She found an expended bullet on the kitchen floor.
>
> Defendant testified at trial and said that he was angry with James because of her vandalism of his car. He denied firing a gun at her, or having a gun at all. He said that the window in question had been broken some time in the past.

Resp. Ex. F at 2-4 (footnotes omitted).

## STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams (Terry), 529 U.S. at 413. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. Id.

Where, as here, the highest state court to consider petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). In this case, the last state court opinion to address the merits of petitioner's claims is the unpublished opinion of the California Court of Appeal. See Resp. Ex. F.

**DISCUSSION**

**I.   Insufficiency of Evidence to Support Child Abuse Conviction**

Petitioner claims that his conviction for inflicting corporal injury on a child under California Penal Code § 273d(a) was not supported by sufficient evidence and thus violated his right to due process. According to his habeas petition, the basis for his conviction was the small piece of glass that struck L.'s eye when he shot his gun through the sliding glass door. Pet. at 5. Petitioner argues that there was no evidence that he pointed his gun at L., nor was the evidence clear as to her location when the incident occurred. Id. at 5a. Consequently, the evidence was insufficient to satisfy the element of intent to injure a child as required under Cal. Penal Code § 273d(a). Resp. Ex. C at 11.[1]

In affirming the conviction, the Court of Appeal analyzed the elements of felony child abuse as defined by the California Penal Code. Resp. Ex. F at 8-10. Section 273d(a) provides:

> Any person who willfully inflicts upon a child any cruel or inhuman corporal punishment or an injury resulting in a traumatic condition is guilty of a felony and shall be punished by imprisonment . . . .

Specifically, the Court of Appeal found that the word "willfully" under the Code implies

---

[1] Respondent's Exhibit C is the opening brief filed by petitioner in the California Court of Appeal.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny          4

simply a "purpose or willingness to commit the act referred to," without necessarily requiring any intent to violate the law or to injure another. Resp. Ex. F at 8. After noting three California Supreme Court decisions that appeared to support defendant's position that the "act referred to" in the child abuse provision (and thus requiring willfulness) is the infliction of injury upon a child,[2] the court concluded that the "act" requiring intent is the application of force generally. Id. at 9. The perpetrator, in other words, need not have the separate intent to bring about the resulting injury to the particular child. Id. at 10. Thus, the evidence defendant claimed was lacking – L.'s whereabouts with respect to the line of fire and his intent to aim in her direction – was irrelevant to a conviction under the child abuse statute requiring only general intent to apply force, in this case to fire the gun into James's house. Id.[3]

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). In a § 2254 challenge to a state criminal conviction, an applicant is entitled to habeas corpus relief if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 321 (1979).

Here, petitioner's claim that there was insufficient evidence to support his child abuse conviction is premised on his interpretation of state law. Federal habeas review does not extend to state-court determinations on state-law questions. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The state's highest court is the final authority on the law of that state.

---

[2] People v. Valdez, 27 Cal. 4th 778 (2002); People v. Sargent, 19 Cal. 4th 1206 (1999); People v. Mills, 1 Cal. App. 4th 898 (1991).

[3] The Court of Appeal also addressed the merits of the State's argument that the child abuse conviction was supported by the "zone of harm" principle established by California Supreme Court cases involving a single target with unintended victims. Resp. Ex. F at 10-13. Although finding a "close question" as to whether the zone of harm theory would apply to the facts of this case, the Court of Appeal held that such a theory would also support defendant's liability under the child abuse statute. Id. at 12-13.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny        5

1  Sandstrom v. Montana, 442 U.S. 510, 516-17 (1979).  Even a determination of state law
2  made by an intermediate appellate court must be followed and may not be "'disregarded by a
3  federal court unless it is convinced by other persuasive data that the highest court of the state
4  would decide otherwise.'"  Hicks v. Feiock, 485 U.S. 624, 630 n.3 (1988) (quoting West v.
5  Am. Tel. & Tel. Co., 311 U.S. 223, 237-38 (1940)).  Petitioner's argument that the lack of
6  evidence regarding L.'s whereabouts and his knowledge thereof precluded a finding of guilt
7  under California Penal Code § 273d(a) hinges on his interpretation of that statute as requiring
8  evidence of his specific intent to injure L.  In denying this claim, the Court of Appeal held
9  that, as a matter of state law as interpreted by the California Supreme Court, inflicting
10 corporal injury on a child does not require specific intent to injure the child.  The only
11 evidence of intent required is the intent to apply force, and there is no dispute that there was
12 sufficient evidence in this case from which the jury could reasonably conclude that petitioner
13 fired the gun into the house and that this led to L.'s injury.  Accordingly, this pronouncement
14 of state law by the Court of Appeal is binding on this court, and petitioner's claim must be
15 denied.

## II.     **Insufficiency of Evidence to Support Assault with a Firearm Conviction**

Petitioner also claims that there was insufficient evidence to support his conviction for assault with a firearm for the same reason he argued that there was insufficient evidence to support his child abuse conviction, i.e., the lack of evidence that he specifically intended to injure L.  Pet. at 5.  Petitioner also argues, for the first time in federal court, that the evidence for the assault charges was improperly based on hearsay.  Id. at 5-5a.

As it did with respect to the child abuse challenge, the Court of Appeal affirmed petitioner's assault conviction by interpreting the mental state required under California law.  Resp. Ex. F at 5-8.  The court concluded that assault is a general intent crime requiring only "an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another."  Id. at 6 (quoting People v. Williams, 26 Cal. 4th 779, 790 (2001)).  As in the child

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny               6

1  abuse context, assault does not require a specific intent to injure the specific victim. Id. at 6.
2  Crosby's knowledge that the house was regularly occupied by James and her minor children,
3  the Court of Appeal held, was sufficient to establish the requisite mental state. Id. at 8.
4  Again, this interpretation of state law is binding on this court. See Hicks, 485 U.S. at 630
5  n.3. Because petitioner's specific intent to assault L. was not, under Cal. Penal Code §
6  245(a)(2), an element of assault with a firearm, the lack of evidence that he pointed his gun at
7  L. or knew where she was located does not establish that there was insufficient evidence to
8  support his conviction.

9      Petitioner also argues that the evidence for the assault with a firearm conviction was
10 based solely on hearsay, which he claims is "untrustworthy," "should not be presented to the
11 triers of fact," and is "traditionally excluded because [it] lacks[s] the conventional indicia of
12 reliability."[4] Pet. at 5-5a. This procedural challenge to the trial court's admission of out-of-
13 court statements is analytically distinct from the substantive issue presented to and addressed
14 by the state courts regarding the requisite level of intent under California law. See Duncan v.
15 Henry, 513 U.S. 364, 366 (1995) (noting that failure to apprise state court of claim that
16 evidentiary ruling violated due process was "especially pronounced" because petitioner did
17 raise due process objection before state court based on different claim). Because petitioner
18 did not present the hearsay argument in the state courts, he failed to exhaust that claim as
19 required for federal habeas review. See 28 U.S.C. § 2254(b), (c); Picard v. Connor, 404 U.S.
20 270, 275-76 (1971). If a habeas petitioner wishes to challenge an evidentiary ruling by a
21 state trial court on due process grounds, "he must say so, not only in federal court, but in
22 state court." Id. Although the hearsay argument is related to petitioner's insufficiency-of-
23 evidence claims raised in the state courts, "mere similarity of claims is insufficient to
24 exhaust." See id.

---

[4] Petitioner does not specify what "hearsay" evidence he refers to in this argument. To the extent he refers to the statements by L. and James to the police shortly after the incident, such statements are routinely admitted as exceptions to the hearsay rule for present sense impressions, recorded recollections, and public records and reports. See Fed. R. Evid. 803(1), (5), (8).

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny      7

1    Accordingly, petitioner's claim that there was insufficient evidence to convict him of
2 assault with a firearm is denied.

### III. **Confrontation Clause and Right to Present a Defense**

Petitioner also claims that he was deprived of his constitutional rights to cross-examine witnesses and to present a defense when the trial court excluded evidence that petitioner sought to admit in order to impeach James.

At the outset of trial, defense counsel moved to admit evidence of a prior stabbing incident involving James and her family members. Resp. Ex. B (Reporter's Transcript Vol. I) at 14-15. Counsel contended that the evidence was relevant because, he asserted, it showed another occasion in which James had lied to the police and had gotten her family members to lie to the police as well. Id. Counsel admitted to not having complete information about the incident at that time, however. Id. at 17. The trial court denied the motion to admit the evidence until counsel received a full report from the District Attorney's office. Id. at 22. After receiving a copy of the police report on the stabbing incident, counsel renewed the motion. Id. at 145. The report indicated that the District Attorney had decided not to file charges because there was insufficient evidence and the stabbing victim refused to cooperate. Id. Describing the contents of the report, counsel said that James had gotten into a fight with her brother, "some pushing and shoving ensued," and one of James's daughters retrieved a knife and stabbed James's brother. Id. at 146. James started swinging a shovel at her brother, then cut him with a saw. Id. Significantly, counsel no longer argued that the evidence showed that James had lied or gotten her family members to lie to the police in connection with the stabbing incident. See Id. at 145-46. Rather, counsel argued the relevance of the evidence as follows:

> I still believe [this shows] moral turpitude misconduct. I think at this point we have some testimony . . . that . . . when Miss James, Zena James, gets angry, she at least admitted on the stand before, that she'll lie to the police. . . . It's another family-type incident, where she resorts to violence at this time. I think it's probative in this case for character and for impeachment, and I request that I be allowed to question Miss James about the incident.

Id. at 146.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny          8

The trial court denied counsel's request to admit the evidence under section 352 of the Evidence Code:

> If it was – if this was a self-defense case, I would probably allow it. But it's not. And as far as Ms. James' credibility is concerned, you've got a number of felony convictions to impeach her with. And also, I think the most important thing is – beyond that is that if you start asking her any of that and she starts denying any of that, then all of a sudden you've got to prove it, and then we've got another trial on our hands. And I don't think it's productive, and I don't think it's going to help the jury in any way at all, and it certainly isn't going to in any way going to speed the trial up. In fact, it's going to delay it more and more. . . . It would just confuse the issues. It would also be an inordinate amount of time trying it, if you had to bring the witnesses in, and the purpose being to show that she's a person who has some moral turpitude problems. You're going to show that already. So, I'm denying that request.

Id. at 146-47. Subsequently, defense counsel questioned James about her four prior felony convictions. Id. at 157.

### A.     Right to Confront Witnesses

The Confrontation Clause of the Sixth Amendment provides that in criminal cases, the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI. A primary interest secured by the right of confrontation is the right to cross-examine witnesses. Davis v. Alaska, 415 U.S. 308, 315 (1974). Cross-examination includes the opportunity to show the witness's possible bias or self-interest in testifying. Id. at 318-19. Although exposure of a witness's motivation in testifying is a proper and important function of the right of cross-examination, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986).

To determine whether a criminal defendant's Sixth Amendment right of confrontation has been violated by the exclusion of evidence on cross-examination, a court must inquire whether: (1) the excluded evidence was relevant; (2) there were other legitimate interests outweighing the defendant's interests in presenting the evidence; and (3) the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness.

Order Denying Petition for Writ of Habeas Corpus
G:\pro-se\sj.rmw\hc.06\Crosby825dny          9

1  United States v. James, 139 F.3d 709, 713 (1998).

2     The California Court of Appeal found that the trial court did not abuse its discretion in
3  excluding the impeachment evidence. Resp. Ex. F at 13. In so ruling, the Court of Appeal
4  properly applied the Van Arsdall balancing test for determining whether the imposed limits
5  on cross-examination violated petitioner's right to confrontation: "The slight probative value
6  of such evidence would be outweighed by the potential confusion of issues and consumption
7  of time." Id. Because the Court of Appeal applied the appropriate federal standard, its
8  decision was not "contrary to" clearly established federal law under § 2254(d)(1). See
9  Williams (Terry) v. Taylor, 529 U.S. 362, 413 (2000).

10    Under the James factors, the Court of Appeal's application of federal law was also
11 objectively reasonable. If proven, evidence that James falsified a police report on a prior
12 occasion and convinced her children to lie on her behalf was relevant to Crosby's defense
13 that she had lied to police about the shooting incident and persuaded her daughter to support
14 her story. However, upon reading the full report and renewing his motion to admit the
15 evidence, defense counsel did not indicate any substantive support for the allegation that
16 James had in fact lied to prosecutors in connection with the stabbing incident, only that it was
17 another "family-type incident" in which she had resorted to violence. The excluded evidence
18 only showed her general moral turpitude, then, and as such it was less relevant to the
19 defense's case than counsel initially claimed. In addition, as the Court of Appeal correctly
20 explained, other legitimate interests outweighed the defendant's interests in presenting the
21 evidence. Given that the District Attorney decided not to file charges due to lack of evidence
22 and the victim's unwillingness to cooperate, admission of the evidence would have required
23 a "mini-trial" to prove Crosby's allegations about the stabbing incident. It was thus
24 reasonable for the Court of Appeal to defer to the trial court's determination that admission
25 of the evidence would have resulted in consumption of time and confusion among the jurors
26 that outweighed its probative value. Finally, defense counsel was able to impeach James
27 with multiple felony convictions, which reasonably supports the Court of Appeal's finding
28

1 that the jury had sufficient information to assess James's credibility notwithstanding the
2 exclusion of the evidence. Indeed, James's recantation of her prior statements at trial itself
3 provided ample evidence on the basis of which the jury could judge her credibility.

4 Because the trial court did not commit constitutional error in excluding the evidence,
5 it is not necessary to reach the question of whether the error was harmless beyond a
6 reasonable doubt. In light of the questionable probative value of the evidence and the
7 inordinate potential for confusion and consumption of time that its admission would have
8 posed, the Court of Appeal's deference to the trial court's decision was neither contrary to
9 nor an unreasonable application of clearly established federal law. Accordingly, habeas
10 relief is not warranted for this claim.

### B.  Right to Present a Defense

12 Petitioner also argues that the exclusion of the evidence from the stabbing incident
13 violated his right to present a defense. The Sixth Amendment affords an accused in a
14 criminal trial the right to present a defense. Chambers v. Mississippi, 410 U.S. 284, 294
15 (1973). Under the Due Process Clause, criminal defendants must "be afforded a meaningful
16 opportunity to present a complete defense." California v. Trombetta, 467 U.S. 479, 485
17 (1984).

18 The erroneous exclusion of critical, corroborative defense evidence may violate the
19 Sixth Amendment right to present a defense. DePetris v. Kuykendall, 239 F.3d 1057, 1062
20 (9th Cir. 2001) (citing Chambers, 410 U.S. at 294, and Washington v. Texas, 388 U.S. 14,
21 18-19 (1967)). Where a defendant's guilt hinges largely on the testimony of a prosecution
22 witness, the erroneous exclusion of evidence critical to assessing the credibility of that
23 witness violates the Constitution. Id. (citing Franklin v. Henry, 122 F.3d 1270, 1273 (9th
24 Cir. 1997)).

25 Factors the Ninth Circuit considers to determine whether the exclusion of evidence
26 violates a defendant's right to present a defense includes the importance of the evidence in
27 assessing the credibility of the witness and the centrality of the evidence to the defendant's

case. DePetris, 239 F.3d at 1062-63. These factors overlap with the James factors discussed above in connection with the confrontation clause claim, and they lead to the same conclusion that the Court of Appeal's evaluation was not contrary to or an unreasonable application of clearly established federal law. In particular, the lack of evidence that James had lied to the authorities about the stabbing incident indicates that the incident did not go "to the heart of the defense" that James had lied to the authorities in this case, but rather to James's moral turpitude generally. See id. at 1062. Nor was the evidence crucial to assessing the credibility of the witness, as the testimony of James's prior felony convictions and her recantation at trial were already before the jury. Thus, the Court of Appeal's reasoning was not an objectively unreasonable application of federal law. Petitioner's claim that his right to present a defense was violated is therefore denied.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment for respondent and close the file.

IT IS SO ORDERED.

DATED: 7/1/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge